679 So.2d 756 (1996)
DEPARTMENT OF EDUCATION, Petitioner,
v.
Sally ROE, etc., et al., Respondents.
No. 86061.
Supreme Court of Florida.
July 18, 1996.
Rehearing Denied September 10, 1996.
*757 Robert A. Butterworth, Attorney General and Laura Rush, Assistant Attorney General, Tallahassee, for Petitioner.
Thomas L. Powell of Douglass, Powell & Rudolph, Tallahassee, on behalf of Sally Roe, et al.; Gordon D. Cherr of McConnaughhay, Roland, Maida & Cherr, P.A., Tallahassee, and C. Graham Carothers of Macfarlane, Ausley, Ferguson and McMullen, Tallahassee, on behalf of Leon County School Board and Richard L. Merrick; John C. Cooper of Cooper, Coppins & Monroe, P.A., Tallahassee, on behalf of Samuel Alderman; and Jeannette M. Andrews of Fuller, Johnson & Farrell, P.A., Tallahassee, on behalf of Nancy E. Russell, Respondents.
Alan S. Zimmet and Mark A. Connolly of Tew, Zinober, Barnes, Zimmet & Unice, Clearwater, for Pinellas Suncoast Transit Authority, Amicus Curiae.
GRIMES, Justice.
We have for review Department of Education v. Roe, 656 So.2d 507 (Fla. 1st DCA 1995), which expressly and directly conflicts with the opinion in Department of Transportation v. Wallis, 659 So.2d 429 (Fla. 5th DCA 1995). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
In Tucker v. Resha, 648 So.2d 1187 (Fla. 1994), we held that a public official asserting qualified immunity as a defense to a federal civil rights claim brought in state court was entitled to interlocutory review of an order which denied her motion for summary judgment based on the defense of qualified immunity. Id. The issue in this case is whether the rule and reasoning of Tucker also apply to a nonfinal order denying a claim of sovereign immunity as a defense to a state law cause of action.
The procedural facts of this case are as follows. Sally Roe and her mother, Ann Roe, sued the Department of Education (DOE), the Leon County School Board, former Ruediger Elementary School teacher Billy Campbell, and others, alleging that Campbell had sexually molested Sally and that she sustained permanent injuries as a result. Count II of the amended complaint alleged that DOE, which issued and renewed teaching certificates in the State of Florida, knew of prior misconduct on the part of Campbell, and had "determined that [he] should not be permitted to teach and that his teaching certificate should not be renewed at least pending further investigation." The amended complaint continued that in light of DOE's determination, DOE's subsequent renewal of Campbell's teaching certificate without further investigation constituted negligence.
DOE filed a motion to dismiss, asserting as one of the grounds that the claim was barred by sovereign immunity. The trial court denied the motion to dismiss. DOE then filed a petition for a writ of common law certiorari, seeking review of the trial court's order. The First District Court of Appeal instead treated the petition as an appeal from an interlocutory (or nonfinal) order, reasoning that the aforementioned principle of Tucker also applied to the denial of a motion to dismiss based on sovereign immunity. The court went on to address the merits of DOE's appeal and eventually ruled in DOE's favor, remanding with directions to dismiss with prejudice the amended complaint. Department of Education v. Roe, 20 Fla. L. Weekly D686, 1995 WL 104265 (Fla. 1st DCA Mar.14, 1995), opinion withdrawn and superseded on rehearing, 656 So.2d 507 (Fla. 1st DCA 1995).
On rehearing, the district court reconsidered Tucker and determined that it should not be read to authorize interlocutory review for anything other than an order denying a claim of qualified immunity in response to a federal civil rights action. Consequently, the court retreated from its earlier decision to treat DOE's petition for certiorari relief as an interlocutory appeal. The court then considered *758 DOE's petition according to the standard of review for common law certiorari and denied relief. Department of Education v. Roe, 656 So.2d at 507-08. We accepted jurisdiction after the Fifth District Court of Appeal reached a contrary conclusion in Wallis, holding that the denial of a claim for sovereign immunity does fall within the ambit of Tucker for purposes of interlocutory review.
The nonfinal order at issue here is not enumerated in Florida Rule of Appellate Procedure 9.130. Nevertheless, DOE argues that the reasoning in Tucker applies equally to an order rejecting a defense of sovereign immunity. In Tucker, we also acknowledged that an order denying summary judgment was not among the nonfinal orders enumerated in rule 9.130. However, we did not end our inquiry there but instead went on to examine the nature of the right of qualified immunity.
We first determined that the purpose of public official qualified immunity is to protect public officials who are required to exercise their discretion "`from undue interference with their duties and from potentially disabling threats of liability.'" Tucker, 648 So.2d at 1189 (quoting Elder v. Holloway, 510 U.S. 510, 514, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994)). The immunity also protects the related public interest in encouraging the vigorous exercise of official authority. Id. We agreed with the United States Supreme Court's opinion in Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that qualified immunity of a public official best achieves its purpose as an immunity from suit rather than as a mere defense to liability, and that the immunity "`is effectively lost if a case is erroneously permitted to go to trial.'" Tucker, 648 So.2d at 1189 (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815). We concluded that early resolution of the qualified immunity issue was necessary to satisfy its purpose. Accordingly, we requested the Appellate Court Rules Committee of The Florida Bar to submit a proposed amendment to rule 9.130 incorporating our decision. Tucker, 648 So.2d at 1190.
DOE argues that the public policy that animates sovereign immunity is similar to the public policy that animates qualified immunity. DOE points to the analysis in Mitchell in which the Court said:
[A] decision of a [federal] district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Industrial Loan Corp., 337 U.S. [541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949)].
472 U.S. at 524-25, 105 S.Ct. at 2814. There is a legitimate basis for the assertion that the determination of sovereign immunity is collateral to the underlying merits of the suit. In fact, at one time suits such as this would have been dismissed for lack of subject matter jurisdiction without regard to the merits of the underlying claim. Department of Natural Resources v. Circuit Court of Twelfth Judicial Circuit, 317 So.2d 772 (Fla. 2d DCA 1975) (Department entitled to prohibition against tort action in which trial judge had denied motion to dismiss), aff'd, 339 So.2d 1113 (Fla.1976). It is only because of the limited waiver of sovereign immunity in section 768.28, Florida Statutes (1995), that such a claim may now proceed in the trial court. See Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113 (Fla.1976).
On the other hand, it cannot be said that suits against governmental entities grounded upon the statutory waiver of sovereign immunity constitute a small class of cases. To the contrary, permitting interlocutory appeals in such cases would add substantially to the caseloads of the district courts of appeal. Moreover, in light of the statutory waiver, it can no longer be said that the issue of sovereign immunity is always independent of the cause itself. Oftentimes, the applicability of the sovereign immunity waiver is inextricably tied to the underlying facts, requiring a trial on the merits. Thus, many interlocutory decisions would be inconclusive and in our view a waste of judicial resources. None of these concerns were evident in Tucker. Tucker is *759 further distinguishable from cases involving sovereign immunity because qualified immunity is rooted in the need to protect public officials from undue interference, whereas sovereign immunity is not. Finally, in Tucker we had an interest in affording federal causes of action brought in state court the same treatment they would receive if brought in federal court. In contrast, this case involves no similar consideration; we are dealing here with a state law defense to an ordinary state law cause of action.
Though not controlling, we note that the only two federal Circuit Courts of Appeal to consider the issue have declined to extend the right of interlocutory appeal to orders denying a motion to dismiss on a claim of federal sovereign immunity. Alaska v. United States, 64 F.3d 1352 (9th Cir.1995); Pullman Constr. Indus., Inc. v. United States, 23 F.3d 1166 (7th Cir.1994). While federal sovereign immunity is not identical to Florida's counterpart,[1] we find portions of the reasoning in those cases persuasive here. Like the federal government, Florida has agreed to be sued in its own courts for tort actions. § 768.28. Further, forcing the state to wait until a final judgment before appealing the issue of sovereign immunity does not present the same concerns that exist in the area of qualified immunity. For example, public officials who defend tort suits against the state are not sued in their personal capacities. As a result, defending these suits is not likely to have a chilling effect on the exercise of public officials' discretion in the discharge of their official duties. In addition, although the state will have to bear the expense of continuing the litigation, the benefit of immunity from liability, should the state ultimately prevail on the sovereign immunity issue, will not be lost simply because review must wait until after final judgment. See Alaska v. United States, 64 F.3d at 1355-56; Pullman, 23 F.3d at 1168.
We reject DOE's reliance upon Mandico v. Taos Construction, Inc., 605 So.2d 850 (Fla. 1992), in which we amended rule 9.130 to authorize review of nonfinal orders determining that a party is not entitled to workers' compensation immunity as a matter of law. Though our basis for the amendment was "the concern for an early resolution of controlling issues," id. at 854, it is obvious that these words were not meant to apply broadly, as virtually any issue with the potential to terminate litigation could be considered "controlling." Rather, our decision in Mandico pivoted on the Workers' Compensation Law, which was created to provide both the exclusive remedy for plaintiffs and the exclusive basis of liability for defendants who meet the criteria of the statute. The case before us today involves no similar comprehensive legislative scheme that would be furthered by permitting early resolution.
We decline to extend Tucker beyond the circumstances of that case to create yet another nonfinal order for which review is available. We approve the decision of the district court of appeal and disapprove the decision in Wallis.
It is so ordered.
KOGAN, C.J., and OVERTON, HARDING, WELLS and ANSTEAD, JJ., concur.
SHAW, J., recused.
NOTES
[1] For example, Florida's sovereign immunity provision stems in part from separation of powers concerns, Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1019 (Fla.1979), while federal sovereign immunity finds its origin in the Appropriations Clause of the United States Constitution. Pullman Constr. Indus., Inc. v. United States, 23 F.3d 1166, 1168 (7th Cir.1994).