PARIENTE, J.
The issue in this case is whether an appellate court should review a non-final order denying a claim of sovereign immunity by Citizens Property Insurance Corporation (Citizens), a state-created entity that provides property insurance, in a bad faith action stemming from the entity’s handling of a property damage claim. This issue arises in the context of the broader question of when appellate courts should use common law writs to review non-final orders involving claims of immunity prior to the entry of a final judgment and when this Court should expand the list of non-final appealable orders. While we do not resolve the broader issue in this case, we determine that Citizens’ claim of immunity is not reviewable by the appellate courts either through the writ of cer-tiorari or the writ of prohibition and decline to expand the list of non-final orders reviewable on appeal to include the discrete legal issue presented in this case.
This case came to us because in denying Citizens’ petition for prohibition, the First District Court of Appeal certified conflict between its decision and decisions of the Fifth District Court of Appeal, which had issued writs of prohibition in similar cases involving Citizens where Citizens claimed sovereign immunity from suits alleging bad faith in failing to settle property dam *346 age claims. Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 46 So.3d 1051, 1053 (Fla. 1st DCA 2010) (asserting conflict between its decision and both Citizens Property Insurance Corp. v. Garfinkel, 25 So.3d 62 (Fla. 5th DCA 2009), and Citizens Property Insurance Corp. v. La Mer Condominium Assoc., 37 So.3d 988 (Fla. 5th DCA 2010)). In addition, the First District denied Citizens’ petition for certiorari and certified the following question as one of great public importance:
Whether, in light of the supreme court’s ruling in Department of Education v. Roe, 679 So.2d 756 (Fla.1996), review of the denial of a motion to dismiss based on a claim of sovereign immunity should await the entry of a final judgment in the trial court?
San Perdido, 46 So.3d at 1053. We have jurisdiction on the basis of both a certified conflict and a certified question of great public importance. See art. V, § 3(b)(4), Fla. Const.
We resolve the certified conflict by concluding that a writ of prohibition is not available to challenge a non-final order denying a motion to dismiss based on a claim of sovereign immunity where sovereign immunity has been partially waived. We therefore approve San Perdido to the extent that it recognized a writ of prohibition is unavailable and disapprove Garfinkel and La Mer to the extent that those cases use a petition for writ of prohibition to reach the issue pertaining to this type of sovereign immunity. We decline to answer the extremely broad certified question, which could apply to many different types of claims of sovereign immunity,[1] but rather rephrase it as follows to address the circumstances of this case:
Should appellate review of a claim of immunity by Citizens Property Insurance Corporation, a state-created entity, from a bad faith action arising out of the handling of a property damage claim await the entry of a final judgment in the trial court?
For the reasons explained in this opinion, we answer that rephrased certified question in the affirmative.
FACTS
This action stems from damage that San Perdido Association, Inc. (San Perdido), incurred after Hurricane Ivan caused substantial property damage in 2004. Citizens is a state-created insurance company that is charged with providing property damage insurance to Floridians who cannot otherwise obtain insurance from private entities. San Perdido, which was insured through Citizens, initially filed a claim under a windstorm insurance policy, but Citizens refused to pay the full claim.
San Perdido then filed an action to compel in the circuit court, and the circuit court ruled in its favor. Citizens appealed to the First District, which summarily affirmed the decision. See Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 22 So.3d 71 (Fla. 1st DCA 2009) (table).
After prevailing in its initial suit, San Perdido brought a statutory first-party bad faith action against Citizens under section 624.155, Florida Statutes (2004), alleging that Citizens engaged in bad faith insurance practices when it refused to make payments. San Perdido, 46 So.3d at 1051-52. Citizens filed a motion to dis *347 miss the action, asserting that it was immune from this type of suit pursuant to section 627.351(6), Florida Statutes (2009). Id. at 1052. The circuit court denied Citizens’ motion to dismiss, citing to the statutory exceptions to immunity provided for in section 627.351(6)(s)l., which include actions involving a breach of contract and a willful tort. Citizens sought interlocutory review by a writ of prohibition or certiora-ri in the First District. Id. at 1052.
The First District recognized Citizens’ status as a “government entity,” created by section 627.351(6). Id. The district court stated that while the Legislature provided Citizens with a limited grant of immunity in connection with Citizens’ performance of its duties and responsibilities, such immunity did not extend to a willful tort or a breach of contract pertaining to insurance coverage. Id. In addressing the appropriateness of granting interlocutory review as to the circuit court’s finding that the suit involved one of these exceptions, the First District relied on this Court’s decision in Department of Education v. Roe, 679 So.2d 756 (Fla.1996), and explained:
In [Roe ], this court declined to undertake interlocutory review of the denial of the motion to dismiss, and noted that such a ruling does not ordinarily qualify for review by certiorari. The supreme court expressly approved this court’s decision. The supreme court in Roe acknowledged that questions of sovereign immunity had at one time been treated as issues of subject matter jurisdiction, but the Roe court rejected further application of that theory and instead observed that such immunity is not lost merely because review must wait until after a final judgment.
San Perdido, 46 So.3d at 1052. The First District noted that although the instant case and Roe dealt with different sections of the Florida Statutes, “the statutory waivers” of the two sections were “similar.” Id. at 1053. The district court ultimately reasoned that in light of Roe, and “[wjithout the irreparable harm required for certiorari,” Citizens was not entitled to interlocutory review. Id. Thus, the First District did not reach the question regarding whether the allegations pertaining to bad faith fell under the exceptions to Citizens’ sovereign immunity.
The First District further held that based on this Court’s precedent, a party was unable to use a writ of prohibition in order to seek relief where a trial court denied a party’s claim of immunity. See id. at 1052. The First District noted that the Fifth District reached a contrary decision in Garfinkel, 25 So.3d at 62, a decision that relied on this Court’s opinion in Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113 (Fla.1976). San Perdido, 46 So.3d at 1052-53. The First District concluded, however, that the “jurisdictional theory” of Circuit Court of Twelfth Judicial Circuit — which treated review of a motion to dismiss based on sovereign immunity as a “question of the trial court’s subject matter jurisdiction” — was no longer applicable after this Court’s more recent decision in Roe. Id. at 1053.
In a dissent, Judge Wetherell agreed with the Fifth District’s conclusion in Gar-finkel that Citizens is immune from bad faith causes of action pursuant to section 627.351(6)(s)l. Id. (Wetherell, J., dissenting). Judge Wetherell noted that “Roe involved a claim of sovereign immunity under section 768.28, Florida Statutes, pursuant to which governmental entities are subject to suit in tort actions but their liability is capped, whereas this case involve[d] a claim that Citizens is statutorily immune from suit under section 627.351(6)(s)l.,” and that “[ujnlike immuni *348 ty from liability, which is not lost if review is deferred until the end of the case, immunity from suit is lost if the party is forced to go through litigation.” Id. at 1054. Judge Wetherell reasoned that Citizens’ petition for writ of certiorari should have been granted “because the trial court’s erroneous order denying Citizens[’j immunity from [San Perdido’s] suit will cause material injury to Citizens that cannot be fully remedied upon plenary appeal.” Id. at 1058-54. Noting that irreparable injury is not enough to justify certiorari review, Judge Wetherell also concluded “that the trial court departed from the essential requirements of law in denying Citizens[’] motion to dismiss because, as explained in Garfinkel, a bad faith claim under section 624.155 is not a tort claim and, thus, not a ‘willful tort’ for purposes of section 627.351(6)(s)l.a.” Id. at 1055-56.
Citizens sought this Court’s review, asserting the First District improperly denied Citizens’ petition for writ of prohibition or writ of certiorari to review the denial of its motion to dismiss based on the immunity conferred in section 627.351(6), Florida Statutes.
ANALYSIS
We begin with the general proposition that non-final orders in the course of trial court proceedings are generally reviewed on appeal at the conclusion of the case. In fact, article V, section 4(b)(1) of the Florida Constitution states, “District courts of appeal shall have jurisdiction to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts.... They may review interlocutory orders in such cases to the extent provided by rules adopted by the supreme court.” The categories of non-final orders appealable to the district courts are set forth in Florida Rule of Appellate Procedure 9.130. Tucker v. Resha, 648 So.2d 1187, 1189 (Fla.1994). In delineating which categories of non-final orders are appealable to the district courts, this Court makes policy determinations, with input from the appellate courts, bar committees, and affected parties, and then weighs the importance of having interlocutory review in light of potential drawbacks, such as increased appellate workload and concomitant delay in the resolution of the case. Therefore, the categories of non-final orders that are appealable have been carefully created with these considerations in mind.[2]
While a party may use a petition for certiorari to seek review of a non-final order not otherwise appealable, these cir *349 cumstances are limited. As we have explained:
This Court has held that “common law certiorari is an extraordinary remedy and should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders.” Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1098 (Fla.1987); see also Belair v. Drew, 770 So.2d 1164, 1166 (Fla.2000); Jaye v. Royal Saxon, Inc., 720 So.2d 214, 214-15 (Fla.1998). Further, we have written: “A non-final order for which no appeal is provided by Rule 9.130 is reviewable by petition for certiorari only in limited circumstances.” Martin-Johnson, Inc., 509 So.2d at 1099; see also Brooks v. Owens, 97 So.2d 693, 695 (Fla.1957) (“This court will review an interlocutory order in law only under exceptional circumstances.”). Limited certiorari review is based upon the rationale that “piecemeal review of nonfinal trial court orders will impede the orderly administration of justice and serve only to delay and harass.” Jaye, 720 So.2d at 215. As the appellate rules committee commented on the interaction of rules 9.030 and 9.130:
The advisory committee was aware that the common law writ of certiorari is available at any time and did not intend to abolish that writ. However, because that writ provides a remedy only if the petitioner meets the heavy burden of showing that a clear departure from the essential requirements of law has resulted in otherwise irreparable harm, it is extremely rare that erroneous interlocutory rulings can be corrected by resort to common law certiorari. It is anticipated that because the most urgent interlocutory orders are appealable under this rule, there will be very few cases in which common law certiorari will provide relief.
Fla. R.App. P. 9.130 (Committee Notes, 1977 Amendment).
Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004) (emphasis added).
With this backdrop, we address the use of extraordinary writs to review non-final orders not designated as appealable under rule 9.130(a)(3). We first decide the certified conflict issue involving the propriety of utilizing a petition for writ of prohibition to seek interlocutory review of a non-final order denying Citizens’ motion to dismiss. We next address whether a writ of certio-rari is appropriately used under these circumstances. Finally, consistent with how this Court has proceeded when this type of issue is presented, we consider whether we should amend rule 9.130(a) to create a new exception to allow for review of a non-final order denying a motion to dismiss based on a claim of immunity asserted by a state-created entity.

I. Resolving the Certified Conflict: A Writ of Prohibition Is Not Available to Review a Claim of Immunity in this Case

The first issue to resolve is the certified conflict: whether Citizens can seek review of the non-final order denying its motion to dismiss through the use of a writ of prohibition. Based on a review of our case law, the plain answer to that question is no.
In Mandico v. Taos Construction, Inc., 605 So.2d 850, 851 (Fla.1992), this Court addressed whether a district court could use a petition for writ of prohibition to permit interlocutory review in a case where a general contractor alleged immunity from suit based on the workers’ compensation statute. The district court had granted the petition for writ of prohibition on the basis that the record clearly showed *350 that the general contractor was entitled to immunity. Id. at 851-52. On review, this Court agreed that the general contractor had immunity from suit where he had procured a workers’ compensation policy for the benefit of the independent contractor and the independent contractor consciously chose to claim workers’ compensation benefits, an exclusive remedy. Id. at 853. However, we also held that a petitioner could not use a writ of prohibition to seek interlocutory review of this type of order because such a writ generally can be used only where the court lacks jurisdiction. Id. at 854.[3] Accordingly, we quashed the decision below to the extent that it granted relief through a writ of prohibition. Id. at 855.[4]
In Citizens Property Insurance Corp. v. Garfinkel, 25 So.3d 62 (Fla. 5th DCA 2009), the Fifth District reached a decision that was contrary to Mandico. Specifically, in Garfinkel, after a dispute arose concerning the extent of damage to his property, Garfinkel filed a breach of contract cause of action and a bad faith cause of action against Citizens, his insurance company. Id. at 64. Citizens moved to dismiss the bad-faith count on the basis that it was barred by sovereign immunity. Id. The Fifth District held that Citizens could use a writ of prohibition to seek interlocutory review of the order denying Citizens’ immunity claim. Id. at 63. In support of this decision, the Fifth District cited to Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113 (Fla.1976), which the Fifth District held stood for the proposition that “a trial court lacks subject matter jurisdiction if a party enjoys the benefits of sovereign immunity with respect to the subject matter of the case before the court, and the issuance of the writ is appropriate to prevent the court from acting in the absence of such jurisdiction.” Garfinkel, 25 So.3d at 63. Likewise, in Citizens Property Insurance v. La Mer Condominium Assoc., 37 So.3d 988 (Fla. 5th DCA 2010), in a brief decision, the Fifth District granted a petition for writ of prohibition for the reasons set forth in Garfinkel.
There is an important difference between this case and Circuit Court of Twelfth Judicial Circuit, 339 So.2d at 1116-17, where the State had not yet waived its sovereign immunity at the time that the cause of action accrued, and thus the trial court lacked subject matter jurisdiction over the case. This court affirmed the district court’s decision in Circuit Court of Twelfth Judicial Circuit and noted that while the Legislature had recently enacted a limited waiver of the State’s sovereign immunity, because the effective date of the statute did not encompass the date that the cause of action accrued, the claim could not proceed through the judicial process. Id. We again recognized this important distinction in Roe, stating that “at one time suits [involving sovereign immunity] would have been dismissed for *351 lack of subject matter jurisdiction without regard to the merits of the underlying claim,” but now can proceed in trial court based on the limited waiver of sovereign immunity. Roe, 679 So.2d at 758.
Resolving the certified conflict between San Perdido and Garfinkel is straightforward. As is clear from this Court’s decisions in Mandico and Roe, it is improper to bring this action through a petition for a writ of prohibition based on the State’s limited waiver of sovereign immunity. While this Court had previously permitted such an action prior to the State’s limited waiver of sovereign immunity, this Court directly acknowledged in Roe that the holding in Circuit Court of Twelfth Judicial Circuit no longer applied. Roe, 679 So.2d at 758. Likewise, in Mandico this Court held “prohibition may not be employed to raise the defense of workers’ compensation immunity.” Mandico, 605 So.2d at 854.
Similarly, here, where the Legislature has enacted a limited waiver of sovereign immunity, the trial court has jurisdiction. Accordingly, a district court is unable to use a writ of prohibition to review a non-final order denying a party’s claim of immunity from suit where a limited waiver of sovereign immunity applies. We disapprove of the Fifth District’s decisions in Garfinkel and La Mer to the extent that it used the vehicle of a writ of prohibition to review a claim of sovereign immunity where a limited waiver of sovereign immunity applies.

II. Resolving the Rephrased Certiñed Question: A Writ of Certiorari Is Not Available to Review the Merits of Citizens’ Claim of Immunity in this Case

We next turn to whether review by writ of certiorari is available. We recently explained the applicable standard regarding the writ of certiorari applied to review denials of motions to dismiss:
Before a court may grant certiorari relief from the denial of a motion to dismiss, the petitioner must establish the following three elements: “‘(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on post-judgment appeal.’ ” Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004) (quoting Bd. of Regents v. Snyder, 826 So.2d 382, 387 (Fla. 2d DCA 2002)).... The last two elements are jurisdictional and must be analyzed before the court may even consider the first element. See id.; Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648-49 (Fla. 2d DCA 1995).
Williams v. Oken, 62 So.3d 1129, 1132-33 (Fla.2011). In other words, before certio-rari can be used to review non-final orders, the appellate court must focus on the threshold jurisdictional question: whether there is a material injury that cannot be corrected on appeal, otherwise termed as irreparable harm. See Allstate Ins. Co. v. Boecher, 733 So.2d 993, 999 (Fla.1999) (using both terms when discussing this requirement). Assuming this requirement is met, the court must then determine whether the decision below departed from the essential requirements of law — something that is more than just a legal error. See Williams, 62 So.3d at 1133 (“In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error.” (quoting Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 528 (Fla.1995))).
Very few categories of non-final orders qualify for the use of this extraordinary *352 writ. In Williams, we recognized that rule 9.130 had already made an exception for the “most urgent interlocutory orders.” Id. at 1134 (quoting Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987)). We therefore cautioned that it is generally inappropriate for district courts to review an order denying a motion to dismiss, aside from those specified under rule 9.130, since certiorari review is “ ‘intended to fill the interstices between direct appeal and the other prerogative writs’ and allow a court to reach down and halt a miscarriage of justice where no other remedy exists; it Vas never intended to redress mere legal error.’ ” Id. at 1133 (quoting Broward Cnty. v. G.B.V. Int’l, Ltd., 787 So.2d 838, 842 (Fla.2001)).
On previous occasions, this Court had the opportunity to expand the writ of cer-tiorari to similar cases involving the interlocutory review of a denial of a motion to dismiss. In each situation, we declined to do so, finding that the proper avenue would be to amend rule 9.130, so long as sufficient policy reasons justified interlocutory review.[5] In Mandico, although the district court improperly attempted to use a writ of prohibition to reach the question presented, the petitioners actually had sought district court review by way of a petition for writ of certiorari. Mandico, 605 So.2d at 851-52. This Court held that a writ of prohibition was improper, but amended rule 9.130 so that similar future claims would have an appropriate avenue by which to reach this Court. Id. at 854-55.
After our decision in Mandico, we had another opportunity in Tucker v. Resha, 648 So.2d 1187, 1188 (Fla.1994), where the petitioner used a petition for writ of certio-rari to seek interlocutory review of a non-final order denying a claim of qualified immunity in a federal civil rights case. If the proceeding had been filed in federal court, the defendant could have sought immediate review of an order denying a motion for summary judgment based upon qualified immunity. See id. After the trial court denied the motion for summary judgment, the First District recognized that there was no Florida rule of procedure that would permit the appeal and thus analyzed the claim under the framework applicable to a petition for writ of certiorari. Id. The district court concluded that certiorari was improper because the trial court’s order did not depart from the essential requirements of law. Id. On rehearing, the district court certified to this Court the question of whether a public official raising a qualified immunity defense to a federal civil rights claim that was filed in state court was entitled to the same standard of review of the denial of her motion for summary judgment as is provided in federal courts. Id. at 1187. On review of the First District’s decision, this Court recognized the important policy reasons as to why interlocutory review should be available when a trial court denies a public official’s claim to qualified immunity. Id. at 1189-90. Based on these policy reasons, the Court held that *353 an order denying summary judgment based upon a claim of qualified immunity in a federal civil rights case is subject to interlocutory review to the extent that the order turns on an issue of law. See id. at 1190.
Again, it must be stressed that in reaching this conclusion, the Court did not utilize the writ of certiorari. Rather, we requested the Florida Bar Appellate Court Rules Committee to submit a proposed amendment that would add a category of non-final orders for qualified immunity in a federal civil rights claim. See id. The rule was subsequently amended to include a narrow exception to permit the review of non-final orders that determine “as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law.” Fla. R.App. P. 9.180(a)(3)(C)(vii).
The Court next addressed the scope of interlocutory review of claims of immunity in Roe, 679 So.2d 756. In that case, a mother sued the Department of Education (DOE), alleging that her daughter’s teacher had sexually molested the child and that DOE knew the teacher had committed pri- or misconduct but still renewed his teaching certificate. Id. at 757. DOE filed a motion to dismiss on the basis of sovereign immunity, which the trial court denied. DOE then sought appellate review of this non-final order, filing a petition for a writ of common law certiorari. Id. The First District ultimately denied relief, summarily concluding that a “denial of a motion to dismiss does not ordinarily qualify for cer-tiorari review.” Dep’t of Educ. v. Roe, 656 So.2d 507, 508 (Fla. 1st DCA 1995). On review, we affirmed and held that the reasoning in Tucker did not extend beyond the circumstances of that case to apply to every order that rejected a claim involving sovereign immunity. Roe, 679 So.2d at 759. Once again, the Court did not consider using a writ of certiorari to provide relief.
After reviewing the relevant case law, including Mdndico, Tucker, and Roe, one principle becomes clear: the writ of certio-rari cannot be used simply because strong policy reasons support interlocutory review. On the other hand, if strong policy reasons favor interlocutory review, this Court will direct that the categories of appealable non-final orders be expanded by amendment to the rules and not by expanding use of the common law writ of certiorari.
In order to invoke common law certiora-ri review of an interlocutory order, a party must first establish that without the use of this extraordinary writ, the party will suffer irreparable harm that cannot be remedied on appeal. However, this Court has never held that requiring a party to continue to defend a lawsuit is irreparable harm for the purposes of invoking the jurisdiction of an appellate court to issue a common law writ of certiorari. In fact, in Martin-Johnson, 509 So.2d at 1100, we recognized that to establish the type of irreparable harm necessary in order to permit certiorari review, a party cannot simply claim that continuation of the lawsuit would damage one’s reputation or result in needless litigation costs. To hold otherwise would mean that review of every non-final order could be sought through a petition for writ of certiorari. Under such a ruling, appellate courts would be inundated with petitions to review non-final orders and trial court proceedings would be unduly interrupted. This must be differentiated from those cases involving absolute immunity, which is intended to prevent a party from becoming involved in a lawsuit altogether.[6]
*354 In attempting to fit this situation into the categories of cases where certiorari has been entertained, Citizens asserts that it is entitled to a writ of certiorari because it will suffer harm if it must continue to defend a lawsuit when the Legislature intended to immunize it from section 624.155 actions, which would frustrate the legislative intent behind the statute. In support of its argument, Citizens cites to this Court’s decisions in Belair v. Drew, 770 So.2d 1164 (Fla.2000), and Martin-Johnson, Inc., 509 So.2d 1097. However, neither of those cases involved a situation where the only harm asserted was that the litigant would simply be required to defend a lawsuit for a longer period of time.
In Belair, this Court permitted the use of a writ of certiorari to review a trial court order that granted temporary visitation rights to a grandparent despite the fact that the trial court postponed its determination regarding whether such an order violated the mother’s constitutional right to privacy. Belair, 770 So.2d at 1167. As this Court recognized, although the trial court could later determine that the forced visitation was unconstitutional, at that point, “[t]he harm petitioner [sought] to avoid would have already been done.” Id. In Martirir-Johnson, this Court held that an appellate court could not use a writ of certiorari to review an interlocutory order denying a motion to dismiss or strike a claim for punitive damages because the petitioner would have an adequate remedy by way of appeal. Martin-Johnson, 509 So.2d at 1098. We distinguished the situation where a party was merely forced to continue with litigation and thus did not suffer “irreparable harm” from those situations where an order violated a party’s “fundamental rights” and caused harm that could not be later remedied or that involved a discovery order that would cause a material injury of an irreparable nature because it was “cat out of the bag” material. Id. at 1099-1100.
A review of Belair and Martin^Johnson supports our conclusion that the situation presented in this case does not involve irreparable harm, as those cases illustrate the difference between a significant injury that cannot be later rectified and a situation where a party must await review of the circuit court’s non-final order until the plenary appeal. While the argument could *355 be made that an erroneous denial of a motion to dismiss always involves the harm of being subjected to continued litigation, there has never been a blanket rule permitting immediate review of denials of motions to dismiss. Ordinarily, the expense of continued litigation does not constitute irreparable harm, and thus the district courts do not have jurisdiction to entertain petitions for certiorari based on a public entity’s claim that it is entitled to immunity based on the particular facts of the lawsuit brought against it. Our precedent does not dictate the expansion of the right to immediate review of all adverse interlocutory orders — and certainly not through certiorari.
In addition, in an attempt to distinguish this case from Roe, 679 So.2d at 756, a case involving sovereign immunity, Citizens asserts that it is not relying on sovereign immunity, but relying on statutory immunity from suit. However, as section 627.351(6)(a)l. has designated that Citizens is a “government entity that is an integral part of the state and ... is not a private insurance company,” the immunity granted by this provision is a form of sovereign immunity. See Black’s Law Dictionary 818 (9th ed. 2009) (defining sovereign immunity as “[a] government’s immunity from being sued in its own courts without its consent”).
In summary, we hold that Citizens cannot seek relief by way of a petition for writ of certiorari, which requires both a showing of irreparable harm and that the ruling departs from the essential requirements of the law. First, Citizens’ primary argument regarding irreparable harm is based on the continuation of defending a lawsuit. If we held that a party can show irreparable harm simply through the continuation of defending a lawsuit, such harm would apply to a multitude of situations well beyond this type of suit. Although Citizens is a “governmental entity,” § 627.351(6)(a)l., Fla. Stat., under the statutory framework of section 627.351(6)(s)l., the Legislature provided for only a limited waiver of sovereign immunity for certain designated claims, including both breach of contract pertaining to insurance coverage and willful torts.[7] Thus, this case does not involve absolute immunity where a party is protected from being involved in a lawsuit of any nature. Citizens has not established that it will suffer irreparable harm, which is a necessary prerequisite for cer-tiorari review.
Second, Citizens must show that the trial court’s order departed from the essential requirements of law. While Citizens asserts that the trial court erred in denying its motion to dismiss, in discussing its entitlement to certiorari review, Citizens focuses only on irreparable harm — it does not assert a departure from the essential requirements of law, but asserts error only in the statutory interpretation. There is an important difference between a departure from the essential requirements of law where there has been a violation of a clearly established principle of law and a case that involves an issue of law where the law is not yet settled. See Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla.2000) (“Unfortunately, there is no Florida case squarely discussing [this legal ques *356 tion]. Without such controlling precedent, we cannot conclude that either court violated a ‘clearly established principle of law.’ ” (quoting Stilson v. Allstate Ins. Co., 692 So.2d 979, 982-83 (Fla. 2d DCA 1997))). We would improperly expand cer-tiorari jurisdiction by applying it to all cases where a party asserts only that the trial court erred regarding an issue of statutory interpretation without regard to the higher threshold of whether the ruling departed from the essential requirements of law.
Accordingly, we hold that Citizens cannot seek relief by way of a petition for writ of certiorari. Our decision not to expand the criteria for certiorari, but rather to treat such policy decisions by considering whether to amend the list of appeal-able non-final orders, is supported by two reasons. First, equating the defense of a lawsuit with the type of irreparable harm necessary for the threshold decision to invoke certiorari has the potential to eviscerate any limitations on the use of this common law writ, which has always been narrowly applied. Second, many of the discrete legal issues, some of which involve ordinary statutory construction, are ill-suited for the second prong of certiorari, which requires a “departure from the essential requirements of law resulting in a miscarriage of justice.”

III. Whether the Court Should Amend Rule 9.130

The final issue before this Court is whether the Court should amend rule 9.130 to provide an opportunity for interlocutory appeal in this situation — an alternative that this Court has considered in other cases. In Mandico, this Court amended rule 9.130 to provide that district courts could review interlocutory orders that denied immunity provided in the workers’ compensation statute because immediate resolution of the issue was necessary, in large part because the Workers’ Compensation Law provided a comprehensive legislative scheme that intended early resolution. See Mandico, 605 So.2d at 854-55; Roe, 679 So.2d at 759 (explaining the reason for the result in Mandico).
In Tucker, the Court decided to amend rule 9.130 again, this time to provide for interlocutory appeal of a non-final order denying a public official’s claim of qualified immunity in federal civil rights cases to the extent that the order turned on an issue of law. See Tucker, 648 So.2d at 1190. This holding focused primarily on the consequences of such lost immunity. See id. at 1189-90.
In Roe, we declined to amend rule 9.130 to permit interlocutory appeal of all orders denying a claim pertaining to sovereign immunity, rejecting the position that the public policy regarding all sovereign immunity claims is the same as the public policy regarding the qualified immunity claim that was at issue in Tucker. Roe, 679 So.2d at 758-59. Our decision recognized the distinction between immunity for public officials and immunity for public entities. Id. at 759.
As discussed in Keck v. Eminisor,
when considering whether there is compelling reason to amend rule 9.130 for claims of immunity such as in this case, we look to numerous policy considerations, including the nature of the rights involved, the likelihood that this issue will reoccur in the future, whether the issue of law can be resolved without resolution of factual issues, and the amount of increased workload that expanding rule 9.130 would have on appellate courts throughout the state. We also consider our prior precedent where such policy decisions were previously made.
*357 104 So.3d at 365. In reviewing such concerns and after considering our prior decisions in Mandico, Tucker, and Roe, we conclude that the policy reasons for amending the rule are not present here.
Citizens’ immunity involves a matter of statutory construction that once resolved will not reoccur; that is, whether Citizens’ immunity includes immunity against statutory first-party bad faith causes of action. Once this legal question is answered, there will not be a need for an interlocutory appeal to answer the same question again. Because we decline to expand the list of non-final orders reviewable on appeal to include this discrete legal issue, we likewise decline to address the issue pertaining to whether Citizens has immunity in the posture of an interlocutory appeal.
CONCLUSION
As the State has partially waived sovereign immunity, we hold that it is improper to bring this action through a petition for a writ of prohibition. We approve San Per-dido to the extent that it recognized that a writ of prohibition is unavailable and disapprove Garfinkel and La Mer to the extent that those cases used a petition for writ of prohibition to reach the issue pertaining to this type of sovereign immunity, thereby resolving the certified conflict among Garfmkel, La Mer, and the case at issue.
Further, because Citizens has failed to show either of the necessary prongs for certiorari, we hold that a writ of certiorari is not available to review the merits of Citizens’ claim of immunity from a bad faith cause of action. We thus approve the decision by the First District to deny cer-tiorari review. As to the rephrased certified question, we answer in the affirmative, holding that appellate review of a claim of immunity by Citizens Property Insurance Corporation, a state-created entity, from a bad faith cause of action arising out of the handling of a property damage claim, is not subject to appellate review before the entry of the final judgment. Finally, we conclude that there is no need to expand the class of non-final orders to include this narrow situation.[8]
It is so ordered.
QUINCE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., specially concurs with an opinion.
CANADY, J., dissents with an opinion, in which POLSTON, C.J. concurs.

. Miami-Dade County, which submitted an amicus brief in this case, also urges a narrowing of the question to ensure that the question addresses the precise issue presented without prejudging the issue that has been presented in Rodriguez v. Miami-Dade County, No. SCI 1-1913, 2011 WL 6004614 (Fla. Order accepting jurisdiction filed Dec. 1, 2011), which is also before this Court.

. Rule 9.130(a)(3) limits the types of non-final orders subject to interlocutory appeal to the district courts as those that
(A) concern venue;
(B) grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions;
(C) determine
(i) the jurisdiction of the person;
(ii) the right to immediate possession of property, including but not limited to orders that grant, modify, dissolve or refuse to grant, modify, or dissolve writs of re-plevin, garnishment, or attachment;
(iii) the right to immediate monetary relief or child custody in family law matters;
(iv) the entitlement of a party to arbitration, or to an appraisal under an insurance policy;
(v) that, as a matter of law, a party is not entitled to workers’ compensation immunity;
(vi) that a class should be certified;
(vii) that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law; or
(viii) that a governmental entity has taken action that has inordinately burdened real property within the meaning of section 70.00l(6)(a), Florida Statutes....
Fla. R.App. P. 9.130(a)(3).

. In a different context, we have recognized that a petition for writ of prohibition may be used to challenge a court’s decision to deny a motion to disqualify the trial judge. See Sutton v. State, 975 So.2d 1073, 1076 (Fla.2008) (”[N]otwithstanding that prohibition is generally available only to prevent courts from acting when there is no jurisdiction to act (rather than to prevent an erroneous exercise of jurisdiction), prohibition is also clearly recognized as the proper avenue for immediate review of whether a motion to disqualify a trial judge has been correctly denied.” (citation omitted)).

. Although this Court held that use of a writ of prohibition was improper in this type of case, this Court ultimately concluded that review for this type of claim should be available. Thus, the Court amended Florida Rule of Appellate Procedure 9.130(a)(3) to provide for such an exception. Mandico, 605 So.2d at 854-55.

. Currently before the Court are other cases involving related issues as to whether an appellate court can review non-final orders denying claims of sovereign immunity. See Keck v. Eminisor, 104 So.3d 359 (Fla.2012); Miami-Dade Cnty. v. Rodriguez, 67 So.3d 1213 (Fla. 3d DCA), review granted, 76 So.3d 938 (Fla.2011). In Keck, we decide that a claim of immunity for an individual defendant who is immune from being named as a defendant as a matter of law under section 728.28(9)(a), Florida Statutes, should be reviewable by a non-final appeal, but we do not address the issue of whether a writ of certio-rari would be an alternative avenue. In Rodriguez, the Third District used a common law writ of certiorari to review a claim of immunity against a governmental entity, placing its opinion in conflict with other appellate court decisions. Rodriguez, 67 So.3d 1213.

. We stress that while increased litigation expenses cannot alone constitute irreparable *354 harm, we must distinguish cases involving absolute immunity from lawsuits of any nature, where the requisite harm may be demonstrated by requiring the party to submit to the very litigation, which would eviscerate the basic purpose of the immunity. A prime example of this type of immunity is judicial immunity. As the First District has explained:
[Jjudicial immunity is intended to prevent a judicial party from becoming involved in a lawsuit, it would be compromised, and irreparable harm sustained, simply by forcing a judicial party to become involved in litigation, irrespective of its outcome. The harm would be irreparable because if the parties wait to address the issue of judicial immunity until appeal, any protection the immunity affords against suit would be sacrificed.
Fuller v. Truncale, 50 So.3d 25, 27-28 (Fla. 1st DCA 2010).
Likewise, the same principle applies to tribal sovereign immunity, which involves complete immunity from suit. The Second District explained why certiorari jurisdiction exists in tribal sovereign immunity cases:
Certiorari jurisdiction exists in this context because the inappropriate exercise of jurisdiction by a trial court over a sovereignly-immune tribe is an injury for which there is no adequate remedy on appeal. Tribal sovereign immunity, like the qualified immunity enjoyed in civil rights cases by public officials, "involves 'immunity from suit rather than a mere defense to liability,' ” which is an “entitlement” that " ‘is effectively lost if a case is erroneously permitted to go to trial.' ”
Seminole Tribe of Fla. v. McCor, 903 So.2d 353, 357-58 (Fla. 2d DCA 2005) (quoting Tucker, 648 So.2d at 1189).

. We have previously recognized that where a plaintiff claims a defendant engaged in egregious and outrageous actions, bad faith can be elevated to a willful tort, an issue that could turn on the facts of the case. See, e.g., Aguilera v. Inservices, Inc., 905 So.2d 84 (Fla.2005) (holding that while generally workers’ compensation legislation immunizes an insurance carrier for simple bad faith claims, the carrier is not cloaked with a shield of immunity if it engages in outrageous actions and conduct that constitute an intentional tortious act while processing the compensation claim).

. Because the decision below did not pass upon the legal question as to whether Citizens is entitled to immunity from a bad faith claim and because we hold that Citizens is not entitled to interlocutory review, we decline to address this issue. In a related case, Keck v. Eminisor, 104 So.3d 359 (Fla.2012), we decided that rule 9.130 should be amended to allow for appeal of the non-final order claim of immunity for an individual defendant under section 728.28(9)(a), Florida Statutes. In that case, because we determined that providing for interlocutory appeal was appropriate, we then addressed the legal question as to whether Keck was entitled to immunity as a matter of law.